NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS CLINTON, <br><br>         Plaintiff-Appellant, <br><br> v. <br><br> COOPER, Correctional Officer; et al., <br><br>         Defendants-Appellees. | No.   17-16091 <br><br> D.C. No. <br> 2:05-cv-01600-JAM-CMK <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 12, 2019
San Francisco, California

Before: SCHROEDER and M. SMITH, Circuit Judges, and RAKOFF,** District Judge.

     Plaintiff-Appellant Clinton, a former inmate in the California Department of

Corrections and Rehabilitation, was raped by another inmate in November 2004.

She filed this action alleging that prison officials retaliated against her for reporting

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*    The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

the sexual assault and/or were deliberately indifferent to her medical needs. The district court dismissed her numerous claims at various stages of the litigation, and only one claim proceeded to trial. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and we affirm the grant of summary judgment as to her claim against Lieutenant DeSantis and reverse and remand the dismissal of Clinton's claims against Officer Cooper, Sergeant Dixon, and Sergeant Sherer.

1.     The district court improperly dismissed Clinton's retaliation claim against Dixon for failure to exhaust administrative remedies. Clinton claimed that Dixon did not provide her with appeals forms and that although she submitted an appeal to Dixon, it never reached the appeals coordinator. These factual allegations raise a disputed issue of fact[1] regarding whether the administrative remedies were "available" as required under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a); *see Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)) (noting that to be available a remedy must be "capable of use; at hand"); *Marella v. Terhune*, 568 F.3d 1024, 1027–28 (9th Cir. 2009) (per curiam) (remedy unavailable where inmate did not have access to necessary grievance forms within the prison's time

---

[1] We may construe the district court's dismissal under Fed. R. Civ. P. Rule 12(b) for failure to exhaust as a grant of summary judgment on the issue of exhaustion. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

limits for filing).

2.     We also find that Clinton adequately alleged a First Amendment retaliation

claim against Sherer.[2]  Within the prison context, a retaliation claim consists of

> (1) An assertion that a state actor took some adverse action against an inmate
> (2) because of (3) that prisoner's protected conduct, and that such action (4)
> chilled the inmate's exercise of [her] First Amendment rights, and (5) the
> action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Prisoners' First Amendment rights encompass their right to file prison grievances.

*Id.* at 567.

Clinton alleged that when she reported the rape to Sherer, he created a

nonenemy chrono and "ordered [her] to sign it."  He also told her that if she

refused, she would be "removed from camp and [her] credit earning [status] would

be effected [sic]."  Clinton, "in fear, complied," and further alleged that she was

"removed from camp . . . and retaliated against for reporting an assault."  The

"mere *threat* of harm"—here, removal from camp and loss of credit-earning

status—is enough to allege adverse action.  *Brodheim v. Cry*, 584 F.3d 1262, 1270

(9th Cir. 2009).  Accordingly, Clinton has sufficiently alleged adverse action taken

---

[2] We do not consider Clinton's diary in deciding this claim as her Third Amended Complaint (TAC) did not mention her diary, nor is a diary the type of evidence that is judicially noticeable.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a court may consider "documents incorporated by reference in the complaint, or matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment").

3

in response to her protected conduct, a chilling of her rights, and implicitly, the absence of a legitimate penological interest. *See Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (emphasizing that officers' "false" actions sufficiently alleged the absence of a legitimate penological reason).

3.      The district court properly granted summary judgment as to Clinton's Eighth Amendment claim against DeSantis because her TAC fails to state a First Amendment retaliation claim against him. Crucially, Clinton does not allege a causal link between the adverse action and the protected conduct, or that her placement in administrative segregation lacked a legitimate penological reason. As the magistrate judge found, even construing Clinton's TAC liberally, her allegations regarding DeSantis focus on the denial of medical care and treatment due to DeSantis's failure to inform the medical staff of the rape.

4.      Finally, we find that at trial, Clinton did not abandon her retaliation claim against Cooper and the district court improperly entered judgment. At trial, Clinton delivered a short opening statement in which she stated that she was "going to try to prove . . . that the defendant knew" of her shoe and blanket allowance and "chose not to give it to me due to a retaliatory action from a grievance that I filed due to an injury that happened to me, a severe injury." Immediately after, the court ordered the jury to leave and admonished Clinton that "You raised the issue of retaliation. That, as applied to this defendant, doesn't

4

apply. Retaliation is different from what's called deliberate indifference . . . ." Despite Clinton's attempt to explain that she thought her claim was for retaliation and affirming her theory of the case, she ultimately conceded that she would "just do what is asked."

Although the district court clarified that it was not telling Clinton how to proceed, due to the court's repeated statements at the outset of the exchange that retaliation did not apply to Cooper and the fact that Clinton was proceeding pro se, we find that she did not affirmatively choose to remove the retaliation claim from the trial. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (a party abandons a claim "when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case").

Further, although the court did not explicitly rule on the retaliation claim, we construe the court's actions as a sua sponte grant of summary judgment. The court concluded that retaliation against Cooper was inapplicable, noting that it had "look[ed] through the entire docket." The court then asked Clinton for essentially a proffer of evidence and asked Cooper's counsel for her view of the evidence. Because Clinton did not receive any notice that the court intended to question the sufficiency of evidence for her retaliation claim, the court could not enter summary judgment sua sponte. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 972 (9th Cir.

5

2010) (en banc) ("Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment," and if the court does not afford the litigant "advance notice . . . [it] has no power to enter summary judgment.") (quotations omitted).

In addition, the district court's ruling was not harmless because the elements of Clinton's deliberate indifference claim do not overlap with the elements of a retaliation claim. The district court found that she could not prove (1) that she would not have suffered the injury but for not receiving the shoes and blanket, (2) that she faced a "serious medical need" or (3) that the "failure to act by the defendant caused the type of harm that would give rise" to liability. None of these elements is necessary for her retaliation claim.

Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED in part; and REMANDED.**